WEINSTEIN *v.* WEINSTEIN.

1. APPEAL AND ERROR—DIVORCE—ACCOUNTING—DE NOVO REVIEW.
   On appeal from decree in suit for accounting after decree of
   divorce, case is heard *de novo* by Supreme Court.

2. DIVORCE—PROPERTY SETTLEMENT—JEWISH RELIGIOUS DIVORCE.
   In former husband's suit against former wife for accounting
   as to financial transactions between them during the marital
   relation after defendant wife had obtained a *pro confesso*
   decree of divorce and parties had also obtained a Jewish re-
   ligious divorce upon their stating they had agreed upon a
   property settlement, such settlement relegated plaintiff to re-
   lief, if any, under agreement therein contained, hence he was
   not entitled to the substantial relief granted in instant suit
   by trial court.

Appeal from Wayne; Murphy (George B.), J.
Submitted April 6, 1945. (Docket No. 82, Calendar
No. 42,739.) Decided June 4, 1945.

Bill by Hervin Weinstein against Betty Wein-
stein, also known as Betty Margolis, for an account-
ing and to have certain conveyances set aside.
Decree for plaintiff. Defendant appeals. Re-
versed.

*Joseph B. Beckenstein* and *William C. Maguire,*
for plaintiff.

*Fitzgerald, Hogue, O'Leary & Reardon* (*George
S. Fitzgerald* and *Paul B. Mayrand,* of counsel),
for defendant.

WIEST, J.   This is a suit in equity by a former husband against his former wife for an accounting as to financial transactions between them during the period of their marital relation.

Both parties came from Russia.  They were married in the United States in June, 1929, and lived together for about 10 years without issue.   In March, 1940, defendant obtained a *pro confesso* decree of divorce in the Wayne circuit court.  June 24, 1940, the parties appeared before two Jewish rabbis and obtained a Jewish religious divorce upon their stating they had agreed upon a property settlement. That so-called Jewish religious divorce could not be pronounced until after decree of divorce in a court of law and its only significance here is the fact that in accord with such religious procedure the parties hereto had to assure the rabbis that they were agreed upon a settlement between themselves of property rights and would reduce the agreement to form.   See Kadushin Jewish Code of Jurisprudence, Law of Divorce.

Rabbi Max J. Wohlgelernter, one of the officiating rabbis at the religious ceremony of divorce, testified:

"Mr. Weinstein contacted me concerning the issuance of a Jewish religious divorce.    *    *    *

"We also ask further whether there are any property disputes between the parties to the marriage, and whether such property disputes have already been settled.   If they have not been settled at the time, we ask them whether they are both agreed as to the manner of settlement, or if the matter is in court, or some other way to be settled, subsequently. The purpose of all these questions is to make the writ final, and not dependent upon any conditions. *    *    *

"We were advised that all questions of property settlement between them had been taken care

of, either previously, or both parties agreed to the manner in which it would be taken care of."

Defendant, by marriage in December, 1941, is now the wife of a Jewish rabbi and a resident of the State of Florida. Plaintiff testified that he believed in his religion as a Jew but does not practice it.

Plaintiff claims that he and defendant resumed cohabitation while the divorce case was pending. If so, he should have divulged that fact to the court in opposition to the granting of the divorce. But, instead, he now attempts to dovetail the claimed cohabitation with an alleged agreement with his wife that the divorce would mean nothing and their marital relations and property affairs would remain unaffected thereby. He approved the granted divorce decree and property disposition thereunder, is bound thereby and was so aware when in the case at bar he asked that it be vacated and then withdrew such request.

Upon hearing, in open court, on the accounting plaintiff was granted substantial relief and defendant reviews by appeal. We hear the case *de novo*.

Before the Jewish religious divorce was granted the parties met with an attorney for the purpose of agreeing upon a final settlement of their property and financial matters. The attorney prepared such agreement in writing and both parties signed it the day after the Jewish religious divorce. We do not lumber this opinion with a statement of the terms of that agreement as the parties know all about it and it would be of no interest to the profession. Plaintiff knew and approved of the property adjustment in the divorce decree.

He now claims that in each instance he relied upon defendant's assurance that the divorce would mean

nothing for they would resume the marital relation and matters between them would stand unaffected thereby. Defendant's denial of any such claimed inane assurance bears more semblance of truth. If plaintiff approved the terms of the divorce decree and signed the property settlement agreement with his "tongue in his cheek," that tongue must now remain silent. Besides this, he could not so impeach his own act.

The testimony of both parties is unsatisfactory, being evasive in many instances and highly colored with self-interest. The testimony has been read and does not establish the claims of plaintiff. We, therefore, vacate the decree entered in the circuit court and a decree will be entered here dismissing the bill. Plaintiff's remedy, if any, is under the agreement executed by the parties the day after the Jewish religious divorce and that, of course, is not for an accounting because the parties agreed upon their rights and remedies. Defendant will recover costs.

STARR, C. J., and NORTH, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.